# EXHIBIT A

**CIVIL DIVISON**
421 Loyola Avenue, Room 402
New Orleans, Louisiana 70112
cdcclerk@orleanscdc.com
Telephone: (504) 407-0000
Fax: (504) 592-9128



**LAND RECORDS DIVISION**
1340 Poydras Street, 4th Floor
New Orleans, Louisiana 70112
civilclerklandrecords@orleanscdc.com
Telephone: (504) 407-0005

*Chelsey Richard Napoleon*
Clerk of Court and Ex-Officio Recorder

**STATE OF LOUISIANA**
**PARISH OF ORLEANS**

I, Kim Davis Livingston, Deputy Clerk for the Civil District Court for the Parish of Orleans, do hereby certify that the attached **12** pages is a *true and correct* certified copy of the entire proceeding entitled:

**CASE NO.: 2025-11278**          **DIVISION: "I-5"**

**ROBERT SAMUEL**

**(BERT) GREENWELL**

**VERSUS**

**BETSY BARNES**

**IN TESTIMONY WHEREOF**, I have hereunto set
My hand and affixed the seal of said Court at
New Orleans, Louisiana, on this
3rd day of December 2025

Kim Davis Livingston
Deputy Clerk, Orleans Parish
*Chelsey Richard Napoleon, Clerk of Court*
Civil District Court for the Parish of Orleans
421 Loyola Avenue, Room 402 New Orleans, Louisiana 70112



FILED
NOV 25 2025
CLERKS OFFICE
CIVIL DISTRICT COURT

**ORLEANS CIVIL DISTRICT COURT**

**STATE OF LOUISIANA**

NO. 2025-11278    DIV.    SECTION 5

**ROBERT SAMUEL**

**(BERT) GREENWELL**

**VERSUS**

**BETSY BARNES**

---

**PETITION FOR DEFAMATION**

---

**NOW INTO COURT,** through undersigned counsel, comes Plaintiff, Robert Samuel (Bert) Greenwell, by pro se representation in the above entitled and numbered cause seeking recovery of damages from Defendant, Betsy Barnes, and in support of this action for recovery of such damages, respectfully represents:

**PARTIES**

1.

Named Plaintiff herein is Robert "Bert" Greenwell, Esq. (hereinafter "Mr. Greenwell" or "Plaintiff") domiciled in the County of New York, State of New York, and who is a person of the full age of majority with procedural capacity to bring this action.

2.

The following party, made Defendant in this suit, is indebted to Plaintiff for payment of damages and other amounts provided for under law:

a) Betsy Barnes (hereinafter "Ms. Barnes" or "Defendant") is domiciled in Orleans Parish, Louisiana, having a service address of 2134 Marengo Street, New Orleans, Louisiana 70114, who is Mr. Greenwell's former supervisor with Morris Bart LLC having with business address at 601 Poydras Street, 24th Floor in New Orleans, LA 70130, and can be served at either her home or work address.

VERIFIED
12-1-2025

## VENUE AND JURISDICTION

3.

Venue is proper in the Parish of Orleans pursuant to the Louisiana Code of Civil Procedure because the defamation occurred in Orleans Parish.

4.

This Court has subject matter jurisdiction to hear the actions presented in this suit.

## USE OF SUMMARY PROCEEDINGS

5.

This Petition is filed as an Ordinary Proceeding. However, Mr. Greenwell reserves the right to file a rule to show cause at a later date to try this action summarily. Plaintiff is entitled to file an action to enforce such a defamation claim and proceed pursuant to Code of Civil Procedure Article 2315. After such reasonable notice, Greenwell requests that the proceeding shall be tried in open court with evidence heard and introduced, with a jury, and with preference over ordinary proceedings.

## FACTS

6.

Mr. Greenwell is an accomplished attorney, licensed in the states of New Jersey and Kentucky. He assumed a position as attorney with Morris Bart LLC ("Morris Bart") on June 3, 2019. Before this he had served as senior attorney with Alston & Bird in New York, New York.

7.

Mr. Greenwell's base compensation as of August 2022 was $140,000 and additionally Morris Bart had agreed to pay Mr. Greenwell specific, calculable bonuses from an agreed upon bonus pool which was equal to 10% of all attorney's fees over $2,000,000 earned by the mass torts team of attorneys ("Mass Torts") payable at each year's end accounting. The Mass Torts team was comprised of Mr. Greenwell and three other attorneys. Ms. Barnes had assured Mr. Greenwell that he would be receiving a "lion's share" of the bonus as attributable to hernia mesh, given that Mr. Greenwell had solely worked on these claims since his hire in 2019. The current inventory worth of the hernia mesh claims at Morris Bart has a net worth of approximately $6,000,000 in legal fees to Morris Bart, whereas more than approximately

$3,000,000 has been paid to Morris Bart as of the date hereof.

8.

From December 2019, there were a series of false complaints by other co-workers that Mr. Greenwell was a misogynist and/or racist. Ms. Barnes was tasked with conducting internal interviews and although she never directly said that Mr. Greenwell was a misogynist, she implied it was impossible: "[Mr. Greenwell and I' spoke about his record with women in the department and I told him that while I do not believe he is a misogynist his employee file would probably say otherwise.]"

9.

In July 2022, Mr. Greenwell began complaining internally to Ms. Barnes regarding his concerns and observations about performance issues at the firm that could be detrimental to the firm's work, including missing information from intake interviews, missing medical records, and other information which made filing of claims within the statute of limitations impossible with several campaigns.

10.

Morris Bart, III ("Mr. Bart"), the owner and sole shareholder of Morris Bart testified on June 4, 2025, that Ms. Barnes told him in August of 2022 unbeknownst to Mr. Greenwell, that "[Ms. Barnes] just got a call from a friend of mine who works at another mass tort firm out of state and this, it is a female attorney that [Ms. Barnes] had a friendship with. And [Ms. Barnes] said this attorney called [her] and said, look, Bert just sent in his resume and is interviewing here and is talking so much trash about your law firm. Telling about you guys don't know what you are doing. It is a terrible place to work. You are committing malpractice on all these cases. And [Ms. Barnes] said it is just so infuriating to me and embarrassing to me. And I said, it is to me, too. I said, it is one thing to apply for a job elsewhere. It is another thing to trash us to our colleagues. Let's get rid of him right now." Mr. Greenwell was unaware of any of this conversation until the deposition of Mr. Bart on June 4, 2025, although prior indication that the conversation existed was furnished in Discovery after 5 p.m. CST on November 25, 2024. Mr. Greenwell additionally adamantly disputes that this ever occurred.

11.

On Monday, August 8, 2022, presumedly following Mr. Bart's conversation with Ms. Barnes, Mr. Greenwell was terminated from his position with Morris Bart. Darlynn Alexius, the director of Human Resources, sent a notice to IT administration, Gary Gardner, Huong Hoang, New Orleans Reception, Ms. Barnes, all of the Mass Tort assistants, all of the Mass Tort Attorneys, Steven Wickenheiser, Kaley Fabre, Clarence Nugent, Mark Duhan, with a copy to Mr. Bart, that "Bert has separated from the Firm. Please disable Firm access, deletions, etc. immediately. We wish him well."

12.

On Monday, August 8, 2022 continuing through a substantial period of time, Ms Barnes and John Christian Enochs ("Mr. Enochs") had substantial conversations with Mr. Greenwell where they both attempted to broker a consulting agreement between Mr. Greenwell and Morris Bart to enable Mr. Greenwell to continue to work on hernia mesh claims. This concept of consulting post-termination was ultimately rejected by Mr. Bart.

13.

Mr. Greenwell continued to work with both Ms. Barnes and Mr. Enochs to provide an outstanding matters list and advise them of all communication that various Morris Bart clients were having with Mr. Greenwell as many had his personal cell phone and communicated via texting and voicemail.

14.

On August 11, 2022, unbeknownst to Mr. Greenwell, Ms. Barnes memorialized her reported August 8 conversation with Mr. Bart to Darlynn Alexius, the head of Human Resources by way of an email ("Email") whereby she omits any of the details she relayed to Mr. Bart in Paragraph 10 above. Instead she asserted that 1) Mr. Greenwell was 1) Job hunting; and 2) Disparaging the Firm to other attorneys. (See Exhibit A, attached hereto). Mr. Greenwell was unaware of this published Email until it furnished in Discovery after 5 p.m. CST on November 25, 2024. The nature of these assertions in the Email is entirely defamatory in nature and further, cannot be collaborated by any of the individuals as referenced therein as the events simply never occurred. Mr. Greenwell did draft a proposal prior to April 1, 2022 which was never presented to Darryl Isaacs as Ms. Barnes, Mr. Enochs, Richard Root (another Mass Tort

attorney) restructured their salaries and bonus compensation at that time. This was not only well known to Ms. Barnes; however, she is clearly reading Mr. Greenwell's emails and could simply determine it was written prior to the April 1 salary restructure, which was not only negotiated for the benefit of Mr. Greenwell, but also Ms. Barnes, Mr. Enochs and Mr. Root as well. Ms. Barnes, and others were fully aware of Mr. Greenwell's discontent which is what lead to the restructuring of salary and bonus at that time as they were all part of that negotiations. Additionally, none of Jonathan Orent, Adam Evans, Mr. Enochs, Robert Price, or Glenn Price will collaborate that any of these comments by Mr. Greenwell were ever made. In fact, Mr. Enochs in his deposition on May 20, 2025 denies that any such statements were made in his presence. Further Mr. Price in a hearing further testified that he never heard Mr. Greenwell disparage the firm and additionally, that the functions in which he met with Mr. Greenwell and Ms. Barnes were "positive" in nature and in a spirit of client development and further business relationships between his firm and Morris Bart. Ms. Barnes further reinforced these allegations in her deposition occurring on May 20, 2025. Additionally, as to Mr. Price, Ms. Barnes had directly request that Mr. Greenwell meet with Glenn Price as late as August 8, 2022.

15.

On August 10, 2022, unbeknownst to Mr. Greenwell until it was released in discovery on November 25, 2024, Mark Duhan, the acting Firm Administrator of Morris Bart, sent an email to Darlynn Alexius with the subject "Text From Bert to Betsy" where Mr. Duhan asserts that "[Bert] seems a bit unhinged here." Clearly from Mr. Duhan's communication with Ms. Alexius, Ms. Barnes had withheld from Mr. Duhan that she was the one that had proposed a consulting arrangement with Mr. Greenwell.

16.

Despite, Mr. Greenwell's constant communication with Ms. Barnes and Mr. Enochs regarding clients and even copying Ms. Barnes on direct communication where Mr. Greenwell pleaded with various clients to retain their services/claims with Morris Bart, Ms. Barnes communicated with Mr. Bart via electronic mail on August 30, 2022, stating "You are Mark were right about not offering a bridge here. He has been contacting the firm's hernia mesh

clients. I don't know exactly what he's telling them, but several have called demanding to know how we are going to handle their cases without the legal genius who is Bert. The calls are too similar in theme to be coincidental. All of them have been easily mollified and of course we have not lost anyone, but still. Dirty pool." This was unbeknownst to Mr. Greenwell until it was produced in discover on November 25, 2024.

17.

On August 30, 2022, following Ms. Barnes advisement that Mr. Greenwell was poaching clients, Mr. Bart (or someone at Morris Bart), directed Victoria E. Emmerling to issue a cease and desist letter threatening litigation.

18.

After his unexpected termination, Mr. Greenwell failed to receive any further salary beyond August 30, 2025 (which included vacation pay as accrued) and struggled to find new employment and remained unemployed until October 31, 2022. In addition to lost wages (including his share of the bonus pool as described in Paragraph 7 for work fully completed by him), he incurred duplicate housing expenses and moving costs.

## CAUSES OF ACTION

### I. ELEMENTS OF A CIVIL DEFAMATION IN LOUISIANA

19.

Mr. Greenwell incorporates and adopts all above numbered paragraphs as if fully stated herein.

20.

*Yanong v. Coleman*, 53-933 (La. App. 2 Cir. 5/17/21), 317 So. 3d 905, 911, *reh'g denied* (June 24, 2021), *writ denied*, 21-01107 (La. 11/10/21), 326 So. 3d 1249 sets forth the four (4) elements of establishing a defamation claim as below:

(1) a false and defamatory statement concerning another;

(2) an unprivileged publication to a third party;

(3) fault (negligence or greater) on the part of the publisher; and

(4) resulting injuries.

**To prove the third element of "fault," malice must be shown.

21.

A.  *A false and defamatory statement concerning another: The statement must be objectively false and damaging to the individual's reputation.* Ms. Barnes published several false and defamatory statements about Mr. Greenwell, including but not limited to: (1) He was seeking employment after April 1, 2022 with Daryl Issacs, a competitor law firm of Morris Bart; (2) He was disparaging the firm with other plaintiff firms while seeking employment, which were also competitors of Morris Bart; and (3) He openly disparaged the firm with other competitive firms in public spaced at both the American Association for Justice (AAJ) and Mass Tort Made Perfect (MTMP) Conferences in 2022. Additionally, while not directly saying Mr. Greenwell was a misogynist, she readily implied so on several occasions, which lead to several discussions on whether Mr. Greenwell had potentially sexually harassed other female employees, while knowing that Mr. Greenwell was an open homosexual and in fact, had never held any sexual relations with any females, recognizing of course that being homosexual and a misogynist is entirely possible (although technically incompatible). Additionally, while not directly saying Mr. Greenwell was a racist, she readily implied so on several occasions, while having been keenly aware that Mr. Greenwell was neither a sexist or racist, and in fact, considered both to be vile and contemptable traits.

22.

B.  *The unprivileged statement must have been made to a third party, not just to the person it concerns.* First and foremost, Ms. Barnes will attempt to assert that the statements made were all privileged within her scope of employment and review. While typically, qualified, or conditional, privilege protects communications made in good faith on a subject where the speaker and the recipient have a corresponding interest or duty, Ms. Barnes defamatory statements were not genuinely privileged. Ms. Barnes clearly acted with malice and abused the privilege. In an attempt to conceal Mr. Greenwell's concerns regarding department performance and reaction to prescription/statute of limitation concerns, Ms. Barnes, rather than addressing his concerns, preempted his complaints by publishing to Mr. Bart, Ms. Alexius, Mr. Duhon and most likely others that among other things, Mr. Greenwell was

disparaging the firms to competitors of Morris Bart among other publications.

23.

C.  ***Fault on the part of the publisher: The Person who made the statement must have been at fault, at a minimum, demonstrating negligence.*** As stated in Paragraph 22 above, Ms. Barnes was not only negligent in making such willful defamatory statements but such publication rose to the level of malice and was not only used for their intended purposes (i.e., to get Mr. Greenwell fired from Morris Bart), but further, Ms. Barnes continued to profit from her defamatory statements as she eliminated Mr. Greenwell from receiving any compensation for his efforts related to hernia mesh and other campaigns.

24.

D.  ***Resulting Injuries: The statement must have caused measurable harm or damages.*** Mr. Greenwell suffered great harm and numerous damages following Ms. Barnes publication of said defamation. He lost his job. He was publicly shamed through his entire Mass Tort Department, Morris Bart and in deed, the mass tort plaintiff industry. Mr. Bart, through his law firm, threatened litigating against Mr. Greenwell for the "poaching" of clients. He continued to be accused of being both "sexist" and "racist" in direct conflict with how vile he considered these traits to be. He could not find work within the Mass Tort field, which he had spent considerable resources of his own, including financial and time establishing for a career change. He has and continues to incur legal expenses and other damages, which are all the proximate cause of Ms. Barnes defamatory statements.

25.

**WHEREFORE**, Plaintiff, Robert Samuel (Bert) Greenwell prays that Defendant, Betsy Barnes, be ordered to show cause at a time and date to be fixed by this Court why judgment should not be rendered against her, and in favor of Plaintiff, for all amounts due and owing together with legal costs and interest thereon from the date of judicial demand until paid, for all damages, penalties and reasonable attorney's fees provided as Plaintiff may be entitled under Louisiana law.

Respectfully Submitted,

A TRUE COPY

DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

**Robert Samuel (Bert) Greenwell**
605 W. 42nd Street
New York, New York 10036
Phone: (862) 254-3785
rsgreenwell@yahoo.com

*Plaintiff Pro Se*

**Exhibit A**

FILED NOV 25 2025 CLERKS OFFICE CIVIL DISTRICT COURT

VERIFIED

## Darlynn Alexius

**From:** Betsy Barnes
**Sent:** Thursday, August 11, 2022 3:10 PM
**To:** Darlynn Alexius
**Subject:** Some details for Bert's file

**Follow Up Flag:** Flag for follow up
**Flag Status:** Flagged

Job hunting:

Bert proposed setting up and running a mass torts department for Darryl Isaacs, the Kentucky Hammer. He worked up an entire proposal with a detailed compensation package. I don't think he ever got in to see the actual Hammer, however, as the proposal was rejected by someone at a lower level. I only found out about this recently, but apparently this occurred a few months ago.

In addition to this, Bert told me a couple of weeks ago that he had hired a headhunter and had resumes out to 20 law firms -- some mass torts, some doing transactions law, in Louisville and Lexington KY and also in New Jersey. I don't know the name of the headhunter. I do know that he had gone through at least a couple of zoom interviews as of last week.

Disparaging the firm to other attorneys:

At the AAJ conference in Palm Beach last February, Bert, John and I met for drinks with a group of hernia mesh attorneys including Jonathan Orent of Motley Rice and Adam Evans, who was previously with the Hollis Law Group but now is with Dickerson Oxton in Kansas City. Bert made several comments about the challenges of doing mass torts litigation in a car accident firm that did not understand the proper compensation structure for other types of work. I don't think John heard this, but I think Rick did, because of where we were sitting. I was sitting by Jonathan and I remarked that the firm actually has several departments and that about half of our clients at any given time are mass torts clients. Rick and I knew Ron Motley back in the 1990's and we laughed with Jonathan about how crazy things were in mass torts back then. We both told some Ron stories, and I mentioned that we and Mr. Bart got to know Ron, Danny Becnel, John O'Quinn, Stan Chesley, and a lot of other colorful characters doing breast implant work in MDL 926. Bert had no idea who any of those people were, but of course Jonathan knew them all. We talked about Mass Torts being a small sandbox and I just chalked up Bert's disparaging remarks to bourbon and financial issues and let it go.

At the MTMP conference in April, Bert had dinner with some hernia mesh attorneys one night while the rest of us ate together with Buddy and Cathy. At breakfast the next morning, Bert told John and me that the evening had turned into a "bitch fest among the lawyers who were actually doing the work for the figureheads who got all the money", or something to that effect. I told Bert that he had been in a nasty mood all conference and I thought he was downright rude to Buddy and even to Cathy. He came back with his usual rant about how he had given the firm a suggested pay scale that would be acceptable and fair and the firm had responded with a lowball, insulting amount. He seemed to think that his behavior was justified. John and I both told him that he was acting like a child, and John told him again not to involve him (John) in any of his hissy fits. Mark and I talked about this behavior when I got back from the conference.

After our disagreement at breakfast in April, I never heard Bert say anything negative about the firm again until a couple of weeks ago when some people from Levin Papantonio and Ketterer Browne Anderson were in town. Bert and I met them for cocktails after work. John and Rick stopped by for a few minutes too, but did not stay long. I left pretty quickly as well, as the tone of the conversation was generally disgruntled, with Bert and an attorney from Levin Pap complaining

1

BART 000030
VERIFIED

about how hard it is to work in a place where a big name is in charge but does not know how things work, which ticked me off as Bert and I had already talked about how inappropriate and disloyal such comments were.

After this last incident and a couple of other Bert outbursts, Bert and I had a very frank and heated conversation about his treatment of the female paralegals and his plans for his future. I told him that he just could not hang around and complain all the time about the firm that was giving him a paycheck. This is when I learned about the headhunter. After this, I thought things had calmed down, but they had not and he continued to complain to anyone who would listen about how he was mistreated. I did not want Glenn, who had just joined the department, to be poisoned against the firm, so I went to Mark.



Betsy Barnes
Mass Tort Attorney
MorrisBart, LLC
Pan American Life Center
601 Poydras Street, 24th Floor
New Orleans, LA 70130
Direct: 504-599-3234
Fax:    833-277-4214
 //morrisbart.com
 www.morrisbart.com

BART 000031